## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF AGRICULTURE EMPLOYEES<br>Michael E. Randall c/o APHIS PPQ<br>375 Rodgers Boulevard<br>Honolulu, HI 96850 | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. _____ |
| DONALD J. TRUMP<br>President of the United States<br>1600 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20500, | ) ) ) ) ) | COMPLAINT<br>FOR DECLARATORY AND<br>INJUNCTIVE RELIEF |
| DALE CABANISS<br>Director of the Office of Personnel Management<br>1900 E Street, N.W.<br>Washington, D.C.  20415, | ) ) ) ) ) | |
| and | ) ) | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, ANIMAL AND PLANT HEALTH INSPECTION SERVICE, PLANT PROTECTION AND QUARANTINE<br>4700 River Road<br>Riverdale, MD  20737<br>County:  Prince George's County, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

Plaintiff National Association of Agriculture Employees (NAAE) is a federal

sector labor organization that represents federal government employees by

negotiating collective bargaining agreements and advocating for federal employees'
rights.

Defendant Donald J. Trump issued three Executive Orders on May 25, 2018:
(1) Executive Order No. 13836, Developing Efficient, Effective, and Cost-Reducing
Approaches to Federal Sector Collective Bargaining (Collective Bargaining Order);
(2) Executive Order No. 13837, Ensuring Transparency, Accountability, and
Efficiency in Taxpayer-Funded Union Time Use (Official Time Order); and (3)
Executive Order No. 13839, Promoting Accountability and Streamlining Removal
Procedures Consistent with Merit System Principles (Removal Procedures Order).
Those Executive Orders aim to weaken federal sector labor organizations and
reduce the rights of the employees they represent.  Multiple provisions in these
three Executive Orders individually and collectively conflict with federal statutes
and are therefore unlawful.

On October 3, 2019, the Executive Order provisions challenged in this
complaint, which were previously enjoined by the U.S. District Court for the District
of Columbia, went into effect.

## JURISDICTION

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

2.      Venue is proper in this Court and this Division pursuant to 28 U.S.C.
§ 1391(e) and Local Rule 501.  Defendant United States Department of Agriculture,

Animal and Plant Health Inspection Service, Plant Protection and Quarantine

(APHIS PPQ) has its headquarters in Prince George's County, Maryland.   Plaintiff

NAAE has members who live and work in Maryland.

## PARTIES

3.      Plaintiff NAAE is an unincorporated association.  NAAE is, pursuant

to Title VII of the Civil Service Reform Act (the Act), Public Law No. 95-454, 92

Stat. 1111 (1978), the exclusive bargaining representative of approximately 1,000

federal employees who work for Defendant APHIS PPQ.  NAAE is a small, "rank-

and-file" union with only 354 current members, and all its officers and others

performing representational duties on behalf of bargaining unit employees do so on

a voluntary basis as full-time employees of Defendant APHIS PPQ.  NAAE-

represented employees certify agriculture commodities for export; inspect foreign

propagative plant shipments entering the United States; inspect plants, plant

products, and conveyances leaving Hawaii, Puerto Rico, and the U.S. Virgin Islands

for pests and diseases; establish trapping and other monitoring programs to detect

new pest infestations in the interior; manage control and eradication programs for

exotic plant pests that have entered the country; and supervise treatments of

foreign agriculture commodities requiring treatment as a condition of entry or to

eliminate exotic pests.   NAAE-represented employees work throughout the country,

including within Maryland, as well as in Puerto Rico and the U.S. Virgin Islands.

4.      NAAE represents the interests of these bargaining-unit employees by

negotiating a collective bargaining agreement (CBA) with Defendant APHIS PPQ;

3

pursuing grievances under that CBA with Defendant APHIS PPQ; filing unfair

labor practices; petitioning Congress for better working conditions, pay, and

benefits; and enforcing employees' collective and individual rights.

5.      NAAE brings this action on behalf of itself and its members, whose

rights are being violated by the Executive Orders at issue.

6.      Defendant Donald J. Trump is the President of the United States of

America.  Defendant President Trump issued the Executive Orders challenged in

this complaint, significant portions of which are ultra vires and invalid.

7.      Defendant Dale Cabaniss is the Director of the United States Office of

Personnel Management (OPM).  The President has charged OPM and its Director

with implementing and guiding federal agencies' implementation of the challenged

portions of the Executive Orders.  *See, e.g.*, Official Time Order, Section 4(c)(i);

Removal Procedures Order, Section 7(a).

8.      OPM has issued several guidance memoranda including on July 5,

2018, August 29, 2018, and October 4, 2019 to federal agencies regarding the

challenged Executive Order provisions.  Because the challenged portions of the

Executive Orders are invalid, no agent of the President, including Defendant

Cabaniss, may lawfully implement them.

9.      Defendant APHIS PPQ, located at 4700 River Road, Riverdale, MD

20737, is a federal agency-employer with which NAAE has its collective bargaining

relationship.  Its most recent collective bargaining agreement with NAAE went into

effect on August 30, 2017.  The signatories to that agreement are the Deputy Administrator of APHIS PPQ and the National President of NAAE.

## STATEMENT OF CLAIMS

### I.   The Federal Civil Service System

10.     The Civil Service Reform Act of 1978 radically revised the federal civil service system.  A key part of that Act was the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.* (the Statute).  The Statute directs federal sector labor organizations to act on behalf of *all* employees in the bargaining units that they were elected to represent, not just the members.  5 U.S.C. § 7114(a).

11.     Labor organizations, such as NAAE, are therefore required to represent all employees in their bargaining units fairly, in good faith, and without discrimination, regardless of whether they have joined the union.  In NAAE's case, this means providing representation to the bargaining unit employees who work for Defendant APHIS PPQ.

### A.   Official Time.

12.     As part of its overhaul of the federal civil service system, Congress allowed union members "official time" for certain activities that they perform on behalf of the union and the employees whom the union represents.  5 U.S.C. § 7131.  That is, representatives of the labor organization, like representatives of management, can engage in collective bargaining and other representational tasks during the work day, while being paid by the government.

13.    Congress provided no quantitative limit on official time.  The Statute expressly provides for official time, without any cap, for negotiating collective bargaining agreements and participating in proceedings before the Federal Labor Relations Authority (FLRA).  *See* 5 U.S.C. § 7131(a),(c).

14.    The Statute also expressly provides that labor organizations and agencies will negotiate over and agree upon other amounts of official time that are "reasonable, necessary, and in the public interest." 5 U.S.C. § 7131(d).  Once the union and agency agree on that amount, such official time "shall be granted."  5 U.S.C. § 7131(d).  The only limitation on official time is that it cannot relate to the union's "internal business," e.g., "solicitation of membership, elections of labor organization officials, and collection of dues."  5 U.S.C. § 7131(b).

15.    Consistent with the Statute, NAAE has negotiated official time provisions in its collective bargaining agreement with Defendant APHIS PPQ, including provisions that discuss allotments of official time and parameters for its use.  Section 7131(d) requires that those agreed upon amounts of official time "shall be granted."

16.    NAAE's collective bargaining agreement with Defendant APHIS PPQ explicitly allows union representatives official time for "[c]ontacting and meeting with members of Congress and their staffs to discuss legislative and related matters affecting the conditions of employment for employees."

### B.    Negotiated Grievance Procedure.

17.    Under the Statute, all federal-sector collective bargaining agreements must include a negotiated grievance procedure (5 U.S.C. § 7121(a)), which must

culminate in binding arbitration (5 U.S.C. § 7121(b)).  Congress also dictated that

the negotiated grievance procedure be broad in scope.  5 U.S.C. § 7103(a)(9).

18.     Congress excluded five, and only five, matters from the expansive

negotiated grievance procedure.  5 U.S.C. § 7121(c).  All other matters fitting within

Congress's expansive definition of "grievance" in Section 7103(a)(9) are properly

subject to the negotiated grievance procedure, though the negotiating parties may

elect to exclude other matters (5 U.S.C. § 7121(a)(2)).

19.     Consistent with the Statute, NAAE has negotiated grievance

procedures with Defendant APHIS PPQ that are broad in scope, through which

employees or NAAE itself can file a grievance on matters relating to employment or

violations of law.

20.     The negotiated grievance procedures in NAAE's collective bargaining

agreement with Defendant APHIS PPQ allow for employees or NAAE to grieve

performance ratings.  Employees having the opportunity to contest flawed

performance ratings is critical.  The federal regulations governing reductions in

force, for example, take performance ratings into account in prescribing how

agencies would determine which employees are retained and which employees

would be released.  5 C.F.R. Part 351.  Consistent with that regulatory scheme,

NAAE's agreement with Defendant APHIS PPQ factors annual performance ratings

into the reduction in force procedures contained in the contract.

21.     NAAE's collective bargaining agreement with APHIS PPQ also generally allows for employees or NAAE to file grievances related to the procedures used to implement incentive pay, including monetary awards.

22.     In addition, the negotiated grievance procedures in NAAE's collective bargaining agreement allow for employees or NAAE to grieve removals.  This is consistent with the Statute, which allows employees to challenge removals through any negotiated grievance procedure available to them or through a Merit Systems Protection Board (MSPB) proceeding, but not both.  NAAE has invoked arbitration over removals on many occasions.  When NAAE invokes arbitration in a removal proceeding, the employees whom it represents get the chance to challenge unjust agency actions with the assistance of skilled and experienced union representatives and without the expense of retaining private counsel for an MSPB appeal.

23.     NAAE's arbitration efforts have resulted in the reinstatement of individuals who were wrongfully removed from the federal civil service.  In addition to reinstatement, these individuals have received back pay, interest, and other benefits as required by the Back Pay Act, 5 U.S.C. § 5596.  NAAE's ability to arbitrate unjust removals is, accordingly, a highly valued benefit of union representation.

### C.     Employees' Opportunity to Improve.

24.     The Act directs agencies to develop one or more personnel appraisal systems.  5 U.S.C. § 4302.  Congress further provided in Section 4302 that, "[u]nder regulations which the Office of Personnel Management shall prescribe, each

performance appraisal system shall provide for . . . reassigning, reducing in grade, or removing employees who continue to have unacceptable performance *but only after an opportunity to demonstrate acceptable performance*." 5 U.S.C. § 4302(c)(6) (emphasis added).

25.     The statutorily mandated "opportunity to demonstrate acceptable performance" (5 U.S.C. § 4302(c)(6)) is commonly known as a "performance improvement period" (PIP).  Agencies must bargain with unions over conditions of employment to the extent that proposals are not inconsistent with federal law, government-wide statute, or rights that the Statute reserves for agency management.  *See* 5 U.S.C. §§ 7103(12),(14), 7106(a), 7117(a)(1).  Congress did not impose any quantitative limit on the length of PIPs, either in Section 4302(c)(6) or in its list of reserved management rights in the Statute.  *See* 5 U.S.C. § 7106. Agencies and unions, therefore, may bargain over the appropriate length of a PIP or, put differently, how long a bargaining unit employee will have to "demonstrate acceptable performance."

26.     NAAE has negotiated the minimum length of PIPs, as set forth in its collective bargaining agreement with Defendant APHIS PPQ.  For every "critical performance element" in which the employee's performance is unacceptable, NAAE's collective bargaining agreement with Defendant APHIS PPQ provides for "a minimum opportunity period of 60-days to demonstrate acceptable performance."

### D.      Bargainable Topics.

27.      The Statute dictates that agencies and labor organizations must bargain over certain topics.   The Statute also specifies that agencies and labor organizations may elect to bargain over additional subjects of bargaining, which are typically known as "elective" or "permissive" subjects.  Nothing in Section 7106 "shall preclude any agency and any labor organization from negotiating" over those subjects.  5 U.S.C. § 7106(b)(1).

### E.      Time Limits for Bargaining.

28.      Congress did not specify a time limit for the collective bargaining process or require proposals to be exchanged in a particular manner.  Rather, the Statute requires, more broadly, that "appropriate representatives" of the union and the agency "shall meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement."  5 U.S.C. § 7114(a)(4).  The duty to "negotiate in good faith" includes the "obligation . . . to meet at reasonable times and convenient places as frequently as may be necessary" to achieve a collective bargaining agreement.  5 U.S.C. § 7114(b).  Congress, moreover, explicitly left it to the negotiating parties to "determine appropriate techniques . . . to assist in any negotiation."  5 U.S.C. § 7114(a)(4).

## II.   President Trump's Executive Orders.

### A.      The Collective Bargaining Order (Executive Order 13836).

29.      Section 5(a).  Section 5(a) of the Collective Bargaining Order provides that "[f]or collective bargaining negotiations, a negotiating period of 6 weeks or less

to achieve ground rules, and a negotiating period of between 4 and 6 months for a term CBA under those ground rules, should ordinarily be considered reasonable . . . ."  The President directs agencies to "call for [Federal Mediation and Conciliation Service] mediation of disputed issues not resolved within those time limits, and, as appropriate, promptly bring remaining unresolved issues to the [Federal Service Impasses Panel] for resolution."

30.     This edict conflicts with Congress's collective bargaining regime, which does not dictate timeframes for collective bargaining; that topic, itself, is the subject of negotiations between the parties.  Congress made clear that the duty to "negotiate in good faith" includes the "obligation . . . to meet at reasonable times and convenient places as frequently as may be necessary" to achieve a collective bargaining agreement.  5 U.S.C. § 7114(b).  Section 5(a) of the Order cannot be reconciled with Congress's command.

31.     <u>Section 5(e)</u>.  Section 5(e) of the Order states that "[i]n developing proposed ground rules, and during any negotiations, agency negotiators shall request the exchange of written proposals" and that "[t]o the extent that an agency's CBAs, ground rules, or other agreements contain requirements for a bargaining approach other than the exchange of written proposals addressing specific issues, the agency should, at the soonest opportunity, take steps to eliminate them."

32.     Congress did not require bargaining proposals to be exchanged in a particular manner, let alone require that they be made in writing.  Section 7114 provides that the parties "shall *meet* and negotiate in good faith for the purposes of

arriving at a collective bargaining agreement."  5 U.S.C. § 7114(a)(4) (emphasis added).

33.     Sections 5(a) and 5(e) of the Order will injure NAAE by constricting the collective bargaining process in a way that is inconsistent with what Congress created.  NAAE negotiations are typically conducted through exchanging proposals via email as well as via in-person and telephonic communications.  This, in NAAE's experience, is the most efficient and effective way for the union to engage in productive negotiations with Defendant APHIS PPQ. In contrast, the Order, by requiring agencies to insist that bargaining occur in writing, will make negotiations less efficient and generate needless, premature bargaining disputes to the Federal Service Impasses Panel.  This, in turn, will impede good faith negotiations and NAAE's ability to secure a collective bargaining agreement through those negotiations.

34.     Section 6.  Section 6 of this Order precludes agency heads from negotiating "over the substance of the subjects set forth in section 7106(b)(1)"—the "permissive" or "elective" subjects that, under the Statute, agencies may elect to bargain over—and requires them to "instruct subordinate officials that they may not negotiate over those same subjects."

35.     Section 6 of the Order will deprive NAAE of the opportunity that Congress meant for it to have when Congress enacted Section 7106(b)(1) of Title 5. That is, Section 6 would eliminate the statutory discretion of Defendant APHIS PPQ to elect to negotiate with NAAE over the substance of the subjects described in

that section of the Statute.  In other words, through Section 6, the President would take away the bargaining discretion that Congress explicitly gave to agencies and unions.  This unwarranted constriction of the Chapter 71 collective bargaining scheme would diminish NAAE's bargaining power by making it impossible for it to bargain over permissive subjects. NAAE has several locally bargained contractual and Memoranda of Understanding provisions that pertain to permissive subjects under the Statute, such as the number of employees assigned to a task in certain circumstances.

B.      **The Official Time Order (Executive Order No. 13837).**

36.     <u>Section 3.</u>  Section 3 of the Official Time Order imposes a quantitative cap on official time in conflict with Section 7131 of Title 5.

37.     Read with Sections 2(i) and (j), Section 3(a) declares that an aggregate annual amount of official time "under section 7131(d) of title 5" that exceeds 1 hour per bargaining unit employee "should . . . ordinarily not be considered reasonable, necessary, and in the public interest, or to satisfy the 'effective and efficient' goal set forth in section 1 of this order and section 7101(b) of title 5, United States Code." Section 3(a) then directs agencies to "commit the time and resources necessary to strive for a negotiated union time rate of 1 hour or less . . . ."

38.     Section 3(a)'s formulaic approach to determining what official time is "reasonable, necessary, and in the public interest" conflicts with Section 7131(d), through which Congress deliberately declined to impose quantitative caps or qualifiers on the amount of official time that unions and agencies could negotiate.

13

39.     Section 3(a) directs agencies, during bargaining, to insist on the imposition of a limitation not contained in the Statute, thereby constricting the collective bargaining process in a way that Congress did not intend.

40.     Section 3(b) requires that any agency head who agrees to authorize—or proposes to the Federal Service Impasses Panel or an arbitrator engaging in interest arbitration—an amount of official time that exceeds the Official Time Executive Order's one-hour-per-bargaining-unit-employee cap report the agreement or proposal "to the President through the Director of the Office of Personnel Management."  The new reporting structure, not contained in the Statute, will have a chilling effect on NAAE's use of official time needed for authorized representational activities.

41.     Section 4(a)(i).  Section 4(a)(i) provides that "[e]mployees may not engage in lobbying activities during paid time, except in their official capacities as an employee."  This proscription conflicts with Section 7131.  Through Section 7131(d), Congress has allowed official time to be provided for any activity related to union representation or related to any matter covered by the Statute, apart from those activities prohibited by Section 7131(b).  Official time for petitioning Congress on issues related to federal employees or federal employment is thus allowable under the Statute.

42.     NAAE's bargaining power and its ability to communicate directly with Congress on matters affecting federal employees' rights will be diminished if official time cannot be used to petition Congress on federal employment matters.

43.     <u>Section 4(a)(ii).</u>  Section 4(a)(ii) of the Order provides the type of

quantitative cap on official time that Congress consciously rejected in Section 7131

of Title 5.  The President, through this provision, contravenes Congress's statutory

scheme. Specifically, Section 4(a)(ii), at subparagraph 1, states that "[e]xcept as

provided in subparagraph (2) of this subsection, employees shall spend at least

three-quarters of their paid time, measured each fiscal year, performing agency

business or attending necessary training." Subparagraph 2 of the subsection

provides that "[e]mployees who have spent one-quarter of their paid time in any

fiscal year on non-agency business" may continue to use official time for the

purposes outlined in 5 U.S.C. § 7131(a) and (c)—*i.e.*, negotiating a collective

bargaining agreement or participating in a proceeding before the FLRA.  But, under

subparagraph 3 of the subsection, any official time spent in excess of 25% of one's

paid time in any fiscal year—including time spent negotiating a collective

bargaining agreement or participating in a FLRA proceeding—"shall count toward

the limitation set forth in subparagraph (1) of this subsection in subsequent fiscal

years."

44.     The annual official time limitation in Section 4(a)(ii) plainly

contradicts Congress's scheme in Section 7131 and will serve to dramatically reduce

the ability of NAAE to represent employees within its bargaining unit.  NAAE has

representatives, such as their national officers, who currently, pursuant to their

agreement with APHIS PPQ, are on more than 25% official time.  This cap will

discourage these experienced union representatives from engaging in activities for

which official time is entirely appropriate because those employees will not want to exhaust their official time allotment prematurely.  And, once the cap is hit, they will be financially harmed by having to use their personal annual leave or leave without pay to perform representational functions.  Alternatively, they will have to forgo all further representational activity, which would result in either (a) employees receiving representation from less experienced union representatives or (b) employees receiving no representation at all.

45.     Although Section 4(a)(ii) would allow employees who have hit the 25%-of-paid-time cap on official time for the fiscal year to use additional official time to negotiate collective bargaining agreements and participate in FLRA proceedings, employees necessarily will be deterred from performing even those vital functions.  That is because, under Section 4(a)(ii)(3) of the Executive Order, time spent on these activities after a union representative exceeds the 25%-of-paid-time cap will count towards that union representative's 25%-of-paid-time cap for the next fiscal year.  In practical terms, this will mean that a union representative would reach his or her official time cap even sooner in that next fiscal year.  This, in turn, would preclude the union representative from using official time for otherwise permissible union functions that do not relate to collective bargaining or FLRA proceedings (i.e., official time that can currently be negotiated under Section 7131(d) of Title 5).  This would be directly contrary to Congress's intent because Section 7131(d) declares that official time amounts negotiated by unions and agencies "shall be granted."

46.     <u>Section 4(a)(iii)</u>.   Section 4(a)(iii) of the Order targets union office space.  NAAE bargains with Defendant APHIS PPQ regarding union office space and the use of agency resources and equipment without need of monetary payment by the union.  NAAE's agreement with Defendant APHIS PPQ provides that the agency will provide the union's executive committee members with at least "a separate, non-shared desk" and, "[s]pace availability and budget considerations permitting . . . a work area, or where possible a separate area or office, suitable to accommodate a reasonable office environment, e.g., desk, chair, table, computer, printer, file cabinet and bookcase."  The parties' contract further provides that Defendant APHIS PPQ "will provide, in work units that have 10 or more bargaining unit employees, local Union officers reasonable and adequate space consistent with local availability and budget considerations, and in accordance with Governmentwide rules and regulations on space management."

47.     Section 4(a)(iii) allows the President to disrupt the existing bargaining scheme by imposing a requirement not found in the Statute on negotiations over the use of agency resources.  The provision provides that federal labor organizations may not have "free or discounted use" of agency resources, such as office space, phones and computers, unless other employees generally have access to such "free or discounted use."  Given that NAAE members are dispersed across the country, NAAE representatives frequently communicate on representational matters using agency teleconference equipment.

17

48.     Section 4(a)(iii)'s restrictions ignore that, through the Statute,
Congress gave federal sector labor organizations a significant portfolio of work, and
with that, the ability to obtain resources to facilitate that work.  Forbidding unions
and agencies from bargaining over access to agency resources unless those
resources are available to other organizations disregards the special status that
Congress has granted federal labor organizations to represent all employees in the
bargaining units.  It also ignores the fact that union office space and related
resources, by being substantively negotiable, are not actually free, even if the union
does not pay for them: a union may very well give ground in other areas in contract
negotiations to secure a union office and related resources.

49.     Section 4(a)(iv).  Section 4(a)(iv) of the Order directs that "[e]mployees
may not be permitted reimbursement for expenses incurred performing non-agency
business, unless required by law or regulation."

50.     NAAE negotiates with Defendant APHIS PPQ for the reimbursement
of certain union expenses.  The parties' contract provides that Defendant APHIS
PPQ "will reimburse travel and per diem expenses for Union representatives
attending on official time the meetings and other activities referenced [elsewhere in
the contract] in which the Employer is an active participant and, when both Parties
are directed to a specified third party (FSIP mediation-arbitration)."  Section
4(a)(iv) of the Order imperils this negotiated, contractual right to the
reimbursement of such expenses.

18

51.     <u>Section 4(a)(v).</u>  Section 4(a)(v) states that employees "may not" use official time "to prepare or pursue grievances (including arbitration of grievances) brought against an agency under procedures negotiated pursuant to section 7121 of title 5, United States Code, except where such use is otherwise authorized by law or regulation." Section 4(v) further provides that this "prohibition" does not apply to (1) an employee using official time "to prepare for, confer with an exclusive representative regarding, or present a grievance brought on the employee's own behalf; or to appear as a witness in any grievance proceeding"; or (2) an employee using official time "to challenge an adverse personnel action taken against the employee in retaliation for engaging in federally protected whistleblower activity."

52.     By declaring that employees are barred from using official time "to prepare or pursue grievances (including arbitration of grievances) brought against an agency" except when authorized by law or regulation, Section 4(a)(v) flatly conflicts with Section 7131, which expressly allows employee union representatives to use official time for such grievances whenever authorized by contract between the employee's exclusive representative and the employing agency.

53.     Congress has required each federal sector collective bargaining agreement to include a negotiated grievance procedure. 5 U.S.C. § 7121(a)(1). Congress also decided that the negotiated grievance procedure must be broad in scope (5 U.S.C. § 7103(a)(9)), excluding only certain topics (5 U.S.C. § 7121(c)).

54.     Labor organizations like NAAE play a critical role in preparing and pursuing grievances.  Employees rely upon their unions to perform this role.

NAAE's representatives routinely represent employees in grievance proceedings against the agency, Defendant APHIS PPQ; this work is so substantial and time-consuming that it cannot effectively be done outside of business hours.  Under Section 4(a)(v), union representatives must do this work while using their personal annual leave or taking leave without pay, which means this work would come at a financial cost that would deter the work from being done at all.

55.    NAAE employees will therefore be deprived of NAAE's expertise and resources in grievance proceedings, including but not limited to, grievances challenging unlawful discrimination, unjust removals or suspensions, or illegal pay practices.  Official time would be prohibited for this kind of work, even though it is plainly in the public interest to have such improper agency actions corrected.

56.    <u>Section 4(b).</u>  Section 4(b) of the Order declares that employees may not use official time "without advance written authorization from their agency, except where obtaining prior approval is deemed impracticable under regulations or guidance adopted pursuant to subsection (c) of this section."

57.    NAAE's contract with Defendant APHIS PPQ contains no requirement for advance written authorization prior to NAAE's use of official time that the parties, in their contract, have agreed is appropriate.  Section 4(b) will make NAAE's ability to assist the bargaining unit employees it represents dependent on the agency's approval of the corresponding amounts of official time and the timing of that approval.  The written preapproval requirement that Section 4(b) imposes is at odds with their negotiated agreement and Section 7131(d) of Title 5.

C.    The Removal Procedures Order (Executive Order No. 13839).

58.    Section 4(a).   Section 4(a) aims to bar two types of disputes from the negotiated grievance procedures that Congress has mandated every federal sector collective bargaining agreement to contain (5 U.S.C. § 7121(a)).  Section 4(a) provides, in relevant part, "to the extent consistent with law, no agency shall: (a) subject to grievance procedures or binding arbitration disputes concerning: (i) the assignment of ratings of record; or (ii) the award of any form of incentive pay, including cash awards; quality step increases; or recruitment, retention, or relocation payments."

59.    The limitations on the negotiated grievance procedure that Section 4(a) imposes are contrary to what Congress has provided. Congress has required that negotiated grievance procedures culminate in binding arbitration (5 U.S.C. § 7121(b)), and it has expansively defined "grievance" to include, in relevant part, "any complaint" by an employee or his or her union "concerning any matter relating to the employment of the employee"; a breach of the collective bargaining agreement; or "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9). Any matter falling within these expansive categories, in Congress's view, could be grieved, unless the matter fell within one of the five narrow categories of matters that Congress expressly excluded from the negotiated grievance procedure.  5 U.S.C. § 7121(c).

60.     Section 4(a)'s purported proscriptions of performance ratings and
incentive pay, including monetary awards, from the negotiated grievance procedure
run afoul of Section 7103(a)(9)'s broad definition of "grievance."  It also
impermissibly seeks to expand Congress's finite list of matters that cannot be
subjected to the negotiated grievance procedure. 5 U.S.C. § 7121(c).  Congress has
made the policy decision of what should be excluded from this procedure; the
President cannot, through executive order, override that policy decision and purport
to expand Congress's determination of what matters may not, as a matter of law, be
grieved.

61.     NAAE's collective bargaining agreement with Defendant APHIS PPQ
allows grievances over ratings and procedural errors in awarding incentive pay.

62.     Section 4(c).   Section 4(c) conflicts with two parts of Congress's
comprehensive personnel scheme.  It states that "no agency shall . . . generally
afford an employee more than a 30-day period to demonstrate acceptable
performance under section 4302(c)(6) of title 5, United States Code, except when the
agency determines in its sole and exclusive discretion that a longer period is
necessary to provide sufficient time to evaluate an employee's performance."

63.     Limiting PIPs to 30 days is contrary to Section 4302(c)(6) of Title 5,
which contains no temporal limitation on PIPs, but instead requires "an opportunity
to demonstrate acceptable performance." The current implementing regulations
issued by the Office of Personnel Management require this opportunity to be a
"reasonable" one.  5 C.F.R. § 432.104.  Separately, the unilateral imposition of a 30-

day limitation on PIPs—the duration of which is negotiable—is contrary to Chapter 71 of Title 5.

64.     The employees that NAAE represents will be harmed by having the PIPs set forth in their contracts, a minimum of 60 days in the CBA for critical performance elements, imperiled. This limitation will make it more difficult for these employees to show improvement in performance and, potentially, save their jobs. They would likewise be harmed by being unable to grieve flawed performance ratings—again putting their jobs in jeopardy—and by being unable to grieve procedural errors concerning incentive payments, including cash awards, to their financial detriment.

65.     <u>Section 3</u>. Section 3 of the Order provides that:

> Whenever reasonable in view of the particular circumstances, agency heads shall endeavor to exclude from the application of any grievance procedures . . . any dispute concerning decisions to remove any employee from Federal service for misconduct or unacceptable performance. *Each agency shall commit the time and resources necessary to achieve this goal* and to fulfill its obligation to bargain in good faith. (emphasis added)

66.     Under Section 3, agencies "shall" expend the "resources necessary" to exclude challenges to removals for misconduct or performance (in other words, removals under Chapter 43 or Chapter 75) from the negotiated grievance procedure. If an agency head "fails to achieve this goal," he or she "shall provide an explanation to the President," through the OPM Director. Section 3, read in full, is not a suggestion. It is an order, and it is one that is wholly inconsistent with the Statute.

67.     The Statute explicitly contemplates that unions and agencies will have the opportunity to negotiate grievance procedures that allow for challenges to

removals.  *See* 5 U.S.C. § 7121(e).  And, as noted above, the Statute allows for an expansive negotiated grievance procedure through which an employee or his or her union may raise, for example, "any complaint . . . concerning any matter relating to the employment of the employee."  5 U.S.C. § 7103(a)(9).  A Presidential declaration that an agency head shall not agree to allow removals to be challenged through the negotiated grievance procedure—on pain of having to explain himself or herself to the President—is flatly inconsistent with Congress's statutory scheme.  The President lacks the authority to foreclose bargaining over the inclusion of removals in the negotiated grievance procedure.

68.    Section 3 would therefore compel agencies to pursue changes to collective bargaining agreements, such as NAAE's with Defendant APHIS PPQ, that would deny access to the negotiated grievance procedure to employees who need it the most:  those who have been unjustly removed.  This is directly contrary to what Congress intended.

## CAUSES OF ACTION

**Count 1**:  **Sections 3, 4(a)(i), 4(a)(ii), 4(a)(iv), 4(a)(v), and 4(b) of the Official Time Order (Executive Order No. 13837) Conflict with 5 U.S.C. § 7131 and the Statute's Collective Bargaining Scheme.**

69.    Plaintiff reasserts the allegations contained in paragraphs 1 through 68 of this complaint as though contained herein.

70.    Courts have jurisdiction to grant relief when the President acts beyond the scope of his or her authority and violates the law to the injury of an individual or organization.

71.     Section 3 will cause Defendant APHIS PPQ to seek to impose a formulaic annual aggregate on official time that is contrary to Section 7131(d). Section 3 will force NAAE to confront an agency proposal dictated by that section. It will preclude the type of good faith negotiations on official time that Congress's scheme requires because the President will have so severely constrained NAAE's ability to bargain over appropriate amounts of official time under Section 7131(d).

72.     Section 4(a)(i)'s provision that "[e]mployees may not engage in lobbying activities during paid time, except in their official capacities as an employee" conflicts with Section 7131. Through Section 7131(d), Congress has allowed official time to be provided for any activity related to union representation or related to any matter covered by the Statute, apart from those activities prohibited by Section 7131(b). NAAE has negotiated a contract with Defendant APHIS PPQ that includes a provision allowing for official time for certain lobbying activities. Section 4(a)(i) will require Defendant APHIS PPQ to eliminate this provision in future negotiations, to the detriment of NAAE and the employees that it represents.

73.     Section 4(a)(ii)'s fiscal year cap on official time contradicts Section 7131 of Title 5, which contains no quantitative limits on the use of official time. Consistent with the Statute, NAAE's collective bargaining agreement with Defendant APHIS PPQ allows for an individual union representative to spend more than 25% of his or her paid time in a fiscal year on official time. Section 4(a)(ii), if valid, will lead to Defendant APHIS PPQ renegotiating or eliminating this contractual right and implementing memoranda of understanding in future

negotiations, even though it is authorized by, and entirely consistent with, the Statute.

74.     By declaring that employees are barred from using official time "to prepare or pursue grievances (including arbitration of grievances) brought against an agency" except when authorized by law or regulation, Section 4(a)(v) flatly conflicts with Section 7131, which expressly allows employee union representatives to use official time for such grievances whenever authorized by contract between the employee's exclusive representative and the employing agency.  NAAE's representatives routinely assist bargaining unit employees in grievance and arbitration proceedings and receive official time for doing so.  Section 4(a)(v) will lead to Defendant APHIS PPQ renegotiating or eliminating the contractual provisions that allow official time for such critical representational work.

75.     Section 4(a)(iv) and 4(b) will lead to NAAE's collective bargaining agreement with Defendant APHIS PPQ being altered because Defendant APHIS PPQ will have no choice but to take bargaining stances consistent with those sections.  It will thus require the elimination or renegotiation of the contractual provisions related to the use of official time and the reimbursement of certain union expenses, taking those provisions off the bargaining table.

76.     In sum, sections 3, 4(a)(i), 4(a)(ii), 4(a)(iv), 4(a)(v), 4(b) would undermine the collective bargaining regime that the Statute establishes by substituting the judgment of the President for that of those to whom Congress has

given the responsibility of bargaining over official time pursuant to Section 7131(d) of Title 5.

77.     Sections 3, 4(a)(i), 4(a)(ii), 4(a)(iv), 4(a)(v), and 4(b) would bestow upon the President power to determine which activities are the proper subject of negotiations under the Statute, in conflict with the very collective bargaining scheme that Congress has prescribed.

**Count 2:  Section 4(a)(iii) of the Official Time Order (Executive Order No. 13837) Conflicts with the Statute's Collective Bargaining Scheme.**

78.     Plaintiff reasserts the allegations contained in paragraphs 1 through 68 of this complaint as though contained herein.

79.     Courts have jurisdiction to grant relief when the President acts beyond the scope of his or her authority and violates the law, to the injury of an individual or organization.

80.     Section 4(a)(iii) would allow the President to upset the Statute's bargaining scheme by removing the ability of agencies and unions to bargain over union offices and related resources, for which payment is not currently required.

81.     Section 4(a)(iii) is contrary to the Statute, which permits NAAE to bargain over access to agency property and resources without the limitation that Section 4(a)(iii) imposes.

82.     Section 4(a)(iii) would bestow upon the President the power to determine which activities are the proper subject of negotiations under the Statute, in conflict with the very collective bargaining scheme that Congress has prescribed.

**Count 3:  Section 4(a) of the Removal Procedures Order (Executive Order No. 13839) Conflicts with Chapter 71 of Title 5.**

83.     Plaintiff reasserts the allegations contained in paragraphs 1 through 68 of this complaint as though contained herein.

84.     Courts have jurisdiction to grant relief when the President acts beyond the scope of his or her authority and violates the law, to the injury of an individual or organization.

85.     Section 4(a) of the Executive Order conflicts with the expansive negotiated grievance procedure that Congress created in Chapter 71 of Title 5. That section purports to exclude certain matters from the negotiated grievance procedure that are plainly grievable under Chapter 71 because they fall within 5 U.S.C. § 7103(a)(9)'s definition of "grievance" and they are not among the five matters that Congress has expressly excluded from the negotiated grievance procedure in 5 U.S.C. § 7121(c).

86.     Section 4(a), thus, would bestow upon the President power that Congress has itself exercised and has otherwise left to negotiating parties to determine: what matters will not be subject to the negotiated grievance procedure contained in a collective bargaining agreement.

**Count 4**:  **Section 4(c) of the Removal Procedures Order (Executive Order No. 13839) Conflicts with 5 U.S.C. § 4302(c)(6) and the Statute's Collective Bargaining Scheme.**

87.     Plaintiff reasserts the allegations contained in paragraphs 1 through 68 of this complaint as though contained herein.

88.     Courts have jurisdiction to grant relief when the President acts beyond the scope of his or her authority and violates the law, to the injury of an individual or organization.

89.     Section 4(c) of the Order intrudes into an area that Congress occupies through the Statute.  Because Section 4(c) conflicts with Section 4302(c)(6) of Title 5, it usurps Congress's lawmaking authority.

90.     Section 4(c)'s 30-day limitation on PIPs is contrary to Section 4302(c)(6) of Title 5, which contains no temporal limitation on PIPs.

91.     Section 4(c)'s declaration that extensions of PIPs beyond 30 days shall be left to the "sole and exclusive discretion" of the agency employer conflicts with Chapter 71 of Title 5.  Congress chose not to include the appropriate length of a PIP in its list of non-negotiable, reserved management rights in Section 7106.

92.     Section 4(c) would bestow upon the President the power to determine what aspects of PIPs are the proper subject of bargaining, in conflict with the collective bargaining scheme that Congress has prescribed.

**Count 5**:  **Section 3 of the Removal Procedures Order (Executive Order No. 13839) Conflicts with the Statute's Collective Bargaining Scheme.**

93.     Plaintiff reasserts the allegations contained in paragraphs 1 through 68 of this complaint as though contained herein.

94.     Courts have jurisdiction to grant relief when the President acts beyond the scope of his or her authority and violates the law, to the injury of an individual or organization.

95.     Section 3 directs agencies to negotiate to exclude removals from the coverage of the negotiated grievance procedure. Removals are plainly grievable under Chapter 71, unless parties to a collective bargaining agreement agree to exclude them.

96.     Section 3 would give the President power that Congress has left to negotiating parties to determine:  what matters shall not be subject to the negotiated grievance procedure contained in a collective bargaining agreement.

**<u>Count 6</u>:  Section 6 of the Collective Bargaining Order (Executive Order No. 13836) Conflicts With 5 U.S.C. 7106(b)(1) and the Statute's Collective Bargaining Scheme.**

97.     Plaintiff reasserts the allegations contained in paragraphs 1 through 68 of this complaint as though contained herein.

98.     Courts have jurisdiction to grant relief when the President acts beyond the scope of his or her authority and violates the law, to the injury of an individual or organization.

99.     Section 6 bars agencies from negotiating over the substance of the "elective" or "permissive" subjects set forth in 5 U.S.C. § 7106(b)(1).  Section 6 would, therefore, deny agency officials the right to make bargaining decisions that Congress provided that they would have.  Section 6 conflicts with Section 7106(b)(1) of Title 5 and the collective bargaining scheme that Congress created in the Statute.

**<u>Count 7</u>:  Sections 5(a) and 5(e) of the Collective Bargaining Order (Executive Order No. 13836) Conflict with the Statute's Collective Bargaining Scheme.**

100.     Plaintiff reasserts the allegations contained in paragraphs 1 through 68 of this complaint as though contained herein.

101.     Courts have jurisdiction to grant relief when the President acts beyond the scope of his or her authority and violates the law, to the injury of an individual or organization.

102.     Sections 5(a) and 5(e) impose rigid constraints on the timing and method of collective bargaining.  These restrictions are inconsistent with the Statute's collective bargaining scheme, which contains no such limits.

103.     These restrictions conflict with Section 7114 of the Statute, which provides that unions and agencies "shall meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement."  5 U.S.C. § 7114(a)(4). That the duty to "negotiate in good faith" includes the "obligation . . . to meet at reasonable times and convenient places as frequently as may be necessary" to achieve a collective bargaining agreement.  5 U.S.C. § 7114(b).  Congress, moreover, explicitly left it to the negotiating parties to "determine appropriate techniques . . . to assist in any negotiation."  5 U.S.C. § 7114(a)(4).

104.     Section 5(a) and 5(e)'s restrictions further conflict with Chapter 71 of Title 5, which leaves it to the parties to negotiate the parameters and process for collective bargaining.

## Count 8:  Cumulatively, the Challenged Executive Order Provisions Would Hollow Out the Collective Bargaining Scheme that Congress Devised.

105.     Plaintiff reasserts the allegations contained in paragraphs 1 through 104 of this complaint as though contained herein.

106.    Courts have jurisdiction to grant relief when the President acts beyond the scope of his or her authority and violates the law, to the injury of an individual or organization.

107.    In addition to violating Congress' statutory scheme individually, the challenged provisions of the three Executive Orders collectively conflict with Congress's statutory scheme.  Taken together, the provisions alter and subvert the comprehensive collective bargaining system that Congress created into something entirely different.  The President lacks the authority to so fundamentally transform the Act that Congress carefully designed.

**REQUEST FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff NAAE requests judgment against defendants:

**A.** Declaring that Sections 5(a), 5(e), and 6 of Executive Order No. 13836, Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining, are unlawful.

**B.** Declaring that Sections 3, 4(a)(i), 4(a)(ii), 4(a)(iii), 4(a)(iv), 4(a)(v), and 4(b) of Executive Order No. 13837, Ensuring Transparency, Accountability, and Efficiency in Taxpayer-Funded Union Time Use, are unlawful.

**C.** Declaring that Sections 3, 4(a), and 4(c) of Executive Order No. 13839, Promoting Accountability and Streamlining Removal Procedures Consistent with Merit System Principles, are unlawful.

**D.** Enjoining Defendant President Trump and his subordinates (including

Defendant Cabaniss) and Defendant APHIS PPQ from enforcing Sections 5(a), 5(e), and 6 of Executive Order No. 13836, Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining.

**E.** Enjoining Defendant President Trump and his subordinates (including Defendant Cabaniss) and Defendant APHIS PPQ from enforcing Sections 3, 4(a)(i), 4(a)(ii), 4(a)(iii), 4(a)(iv), 4(a)(v), and 4(b) of Executive Order No. 13837, Ensuring Transparency, Accountability, and Efficiency in Taxpayer-Funded Union Time Use.

**F.** Enjoining Defendant President Trump and his subordinates (including Defendant Cabaniss) and Defendant APHIS PPQ from enforcing Sections 3, 4(a), and 4(c) of Executive Order No. 13839, Promoting Accountability and Streamlining Removal Procedures Consistent with Merit System Principles.

**G.** Ordering such further relief as the Court may deem just and appropriate.

Respectfully submitted,

/s/
Bruce R. Lerner

Bruce R. Lerner (blerner@bredhoff.com)
Bar Number 04235
Jacob Karabell* (jkarabell@bredhoff.com)
BREDHOFF & KAISER PLLC
805 15th St. NW, Suite 1000
Washington, DC 20005
202-842-2600

October 18, 2019          Attorneys for Plaintiff NAAE

* Admission pending