**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

NATIONAL ASSOCIATION OF          *
AGRICULATURE EMPLOYEES,
                                 *
      **Plaintiff,**
                                 *
v.                               *          **Case No.: GJH-19-3057**

DONALD J. TRUMP, *et al.*,        *

      **Defendants.**             *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

In May 2018, President Donald J. Trump issued three executive orders regarding federal labor-management relations. ECF No. 1 at 2.[1] Plaintiff National Association of Agriculture Employees, a federal sector labor organization, subsequently brought this civil action against the President; the United States Department of Agriculture, Animal and Plant Health Inspection Service, Plant Protection and Quarantine ("APHIS PPQ"); and Dale Cabaniss, Director of the Office of Personnel Management ("OPM") (collectively, "the Government"), challenging the executive orders as violative of federal laws governing labor-management relations. ECF No. 1. Pending before the Court is the Government's Motion to Dismiss for Lack of Subject-Matter Jurisdiction. ECF No. 13. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, the Government's Motion to Dismiss for Lack of Subject-Matter Jurisdiction is granted.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

## I.   BACKGROUND[2]

### A.  The Statutory Framework

In 1978, Congress enacted the Federal Service Labor-Management Relations Statute (the "Statute") as part of the broader Civil Service Reform Act ("CSRA") based upon its findings that "the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them … safeguards the public interest," "contributes to the effective conduct of public business," and "facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment." 5 U.S.C. § 7101(a)(1). The purpose of the Statute was "to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government." *Id.* § 7101(b). Generally speaking, the Statute strives to accomplish these goals by, among other things, affirming the right of federal employees to organize and bargain collectively, *see id.* §§ 7102; determining which matters must, can, or cannot be bargained over, *see id.* §§ 7102, 7106, 7117, 7121, 7131; and developing a dispute-resolution mechanism for the various foreseeable issues that might arise during the collective bargaining process or as part of a final collective bargaining agreement, *see id.* §§ 7104–5, 7116, 7118–19, 7121–22, 7132.

Specifically, the Statute provides that federal unions and agencies "shall meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement." *Id.* § 7114(a)(4). "Collective bargaining" is defined as "the performance of the mutual obligation of … an agency and the [union] … to meet at reasonable times and to consult and bargain in a good-

---

[2] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

faith effort to reach agreement with respect to the conditions of employment affecting such employees." *Id.* § 7103(a)(12). "[C]onditions of employment" that are subject to negotiation under the Statute include "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions." *Id.* § 7103(a)(14). Agencies and unions must bargain over the scope of grievance procedures for disputes between employees and management, *see id.* § 7121(a), and the availability of "official time," *id.* § 7131(d), which is the time spent by employees on union business during working hours, and they may bargain over a narrow category of "permissive" matters "at the election of the agency," *id.* § 7106(b)(1); *see also id.* (allowing, "at the election of the agency," negotiation as to the "numbers, types, and grades of employees or positions assigned to" any project, or "the technology, methods, and means for performing work").

The Statute also establishes a scheme of administrative and judicial review. Administrative review is provided by the Federal Labor Relations Authority ("FLRA"), a three-member agency charged with adjudicating federal labor disputes, including "negotiability" disputes and "unfair labor practice" disputes. *See* 5 U.S.C. § 7105(a)(2). In negotiability disputes, the FLRA determines whether agencies and unions must bargain over certain subjects. *Id.* §§ 7105(a)(2)(E), 7117(c)(1). In unfair labor practice disputes, the FLRA resolves whether an agency must bargain over a subject, violated the duty to bargain in good faith, or otherwise failed to comply with the Statute. *Id.* §§ 7105(a)(2)(G), 7116(a), 7118. The FLRA's decisions in such disputes are then subject to direct review in the courts of appeals. *Id.* §§ 7123(a), (c).

### B.  The Executive Orders

In May 2018, the President issued three executive orders (the "Executive Orders") regarding federal labor-management relations: (1) *Developing Efficient, Effective, and Cost-*

3

*Reducing Approaches to Federal Sector Collective Bargaining*, Exec. Order No. 13,836, 83 Fed.

Reg. 25,329 (May 25, 2018) (the "Collective Bargaining Order"); (2) *Ensuring Transparency,*

*Accountability, and Efficiency in Taxpayer-Funded Union Time Use*, Exec. Order No. 13,837, 83

Fed. Reg. 25,335 (May 25, 2018) (the "Official Time Order"); and (3) *Promoting Accountability*

*and Streamlining Removal Procedures Consistent with Merit System Principles*, Exec. Order No.

13,839, 83 Fed. Reg. 25,343 (May 25, 2018) (the "Removal Procedures Order"). *See* ECF No. 1

at 2.

The Collective Bargaining Order provides agencies with certain procedures that they

should seek to implement during negotiations with unions. *See* 83 Fed. Reg. at 25,331–32. It

directs agencies not to bargain over permissive matters, as those matters are defined in 5 U.S.C.

§ 7106(b)(1), and it advises that a reasonable negotiation time period is six weeks for ground

rules and four to six months for a collective bargaining agreement. *Id.* It also states that

negotiation should take place through the exchange of written proposals. *Id.* at 25,332.

The Official Time Order instructs agencies to aim to limit the extent to which collective

bargaining agreements authorize official time, meaning time spent by employees on union

business during working hours. 83 Fed. Reg. at 25,336. It places caps on the use of official time

and requires preauthorization for the use of official time. *Id.* at 25,336–37. It also restricts union

access to government resources and places limits on the reimbursement of employees' expenses

incurred while undertaking union activities. *Id.* at 25,337, 25,339.

The Removal Order instructs agencies to seek to exclude from grievance procedures any

dispute over a decision to remove an employee "for misconduct or unacceptable performance."

83 Fed. Reg. at 23,344. Subject to certain exceptions, it also prohibits agencies from resolving

disputes over employee ratings and incentive pay through grievance or arbitration proceedings,

4

and it mandates that certain employees may have no more than thirty days to improve their performance before being reassigned, demoted, or fired. *Id.* at 25,334–45.

### C. Previous Litigation

Various federal employee unions have previously brought two similar but separate lawsuits challenging the Executive Orders. In *AFGE v. Trump*, 318 F. Supp. 3d 370 (D.D.C. 2018), the American Federation of Government Employees ("AFGE") and numerous other federal employee unions brought consolidated cases, contending that (1) the President had no statutory or constitutional authority to issue executive orders pertaining to the field of federal labor relations; (2) provisions within the Executive Orders conflicted with particular sections of the Statute in a manner that abrogated the unions' statutory right to bargain collectively; and (3) the Executive Orders violated the Constitution, specifically the Take Care Clause and the First Amendment right to freedom of association. 318 F. Supp. 3d at 380. On cross-motions for summary judgment, the Government contended that the district court lacked subject-matter jurisdiction over the dispute due to the channeling effect of the Statute's administrative review scheme, that some of the unions' claims were insufficiently concrete to be prudentially ripe for judicial decision, and that the unions' claims failed on the merits. *Id.* The district court held that it did have subject-matter jurisdiction and that the legal claims were generally ripe for judicial resolution. *Id.* at 395–412. On the merits, the district court determined that although the President did have statutory authority to issue executive orders in the field of federal labor relations generally, nine provisions of these specific Executive Orders violated the Statute. *Id.* at 412–33. The district court therefore enjoined the executive branch from implementing those nine provisions. *Id.* at 440.

On appeal, the United States Court of Appeals for the D.C. Circuit reversed the district court, finding that it lacked subject-matter jurisdiction. *AFGE v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019). Applying the two-step framework articulated by the Supreme Court in *Thunder Basin Co. v. Reich*, 510 U.S. 200 (1994), the D.C. Circuit determined that Congress had precluded district court jurisdiction over challenges to the Executive Orders by establishing an alternative statutory scheme for administrative and judicial review in the Statute. *AFGE*, 929 F.3d at 754–61. At the first step, the D.C. Circuit determined that Congress intended the statutory scheme laid out in the Statute "to be exclusive with respect to claims within its scope." *Id.* at 755. At the second step, the D.C. Circuit determined that all meaningful review was "not foreclosed by requiring the unions to proceed through the statutory scheme" and the unions' claims were "not wholly collateral to the statutory scheme" or "beyond the expertise of the FLRA." *Id.* at 755–61. Thus, the D.C. Circuit vacated the district court's judgment on the merits. *Id.* at 761.

After the D.C. Circuit issued its decision in *AFGE v. Trump*, the Service Employees International Union and the Service Employees International Union Local 200United filed a lawsuit challenging the Executive Orders in the Western District of New York. *See SEIU v. Trump*, 420 F. Supp. 3d 65 (W.D.N.Y. 2019). The unions contended that the Executive Orders violated the Administrative Procedures Act ("APA") because OPM was poised to implement rules that should be subject to notice and comment rulemaking without complying with the APA's procedural requirements and that OPM's implementation of specific provisions in the Executive Orders would violate the CSRA and the Statute. 420 F. Supp. 3d at 70. In the absence of contrary authority in the Second Circuit, the Western District of New York adopted the D.C. Circuit's conclusion that district courts lacked subject-matter jurisdiction to consider the

lawfulness of the Executive Orders and that the unions were therefore required to litigate those

claims "before the FLRA in the context of concrete bargaining disputes." *Id.* at 73–74.

### D.  Current Lawsuit

Plaintiff is a federal sector labor union and the exclusive bargaining representative for

federal employees who work for Defendant APHIS PPQ. ECF No. 1 ¶ 3. On October 18, 2019,

Plaintiff filed a Complaint in this Court alleging in Counts One through Seven that each of the

Executive Orders violate particular requirements of the Statute, as well as the Statute's collective

bargaining scheme, and alleging in Count Eight that the cumulative impact of the Executive

Orders undermines the collective bargaining scheme that Congress carefully designed. ECF No.

1. Plaintiff seeks a declaration that the challenged provisions of the Executive Orders are

unlawful and an order enjoining executive enforcement of those provisions. *Id.* On December 23,

2019, the Government filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction. ECF

No. 13. Plaintiff filed a response on January 20, 2020, ECF No. 16, and the Government filed a

reply on January 31, 2020, ECF No. 17.

## II.    STANDARD OF REVIEW

The Government moves to dismiss the Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(1), contending that the Court lacks subject-matter jurisdiction to determine

whether the challenged Executive Orders violate the Statute. "A district court should grant a

motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) 'only if the material

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of

law.'" *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir.

2018) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). "The burden of

establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Constr.*,

776 F.3d 271, 272 (4th Cir. 2015). "When a defendant challenges subject matter jurisdiction

pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the

issue, and may consider evidence outside the pleadings without converting the proceeding to one

for summary judgment.'" *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg &*

*Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Where jurisdiction

"ceases to exist, the only function remaining to the court is that of announcing the fact and

dismissing the cause." *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting

*Ex parte McCardle*, 19 L.Ed. 264 (1868)).

## III.    DISCUSSION

Federal district courts generally have "original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Congress,

however, may "expressly divest the district courts of jurisdiction over certain claims" or

"impliedly preclude jurisdiction by creating a statutory scheme of administrative adjudication

and delayed judicial review in a particular court." *Bennett v. SEC*, 844 F.3d 174, 178 (4th Cir.

2016).

The Supreme Court's decision in *Thunder Basin Coal Co. v. Reich* established a two-step

framework for determining whether Congress has divested district courts of jurisdiction over

agency action. First, the court must "ask whether Congress's intent to preclude district-court

jurisdiction is 'fairly discernible in the statutory scheme.'" *Bennett*, 844 F.3d at 181 (quoting

*Thunder Basin*, 510 U.S. at 207). "This involves examining the statute's text, structure, and

purpose." *Id.* (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012)). Second, the court must

"ask whether plaintiffs' 'claims are of the type Congress intended to be reviewed within this

statutory structure.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212). "At this second stage, [the

8

court] consider[s] three factors … focus[ing] on (1) whether the statutory scheme 'foreclose[s]

all meaningful judicial review.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212–13). The court

should "also consider (2) the extent to which the plaintiff's claims are 'wholly collateral' to the

statute's review provisions, and (3) whether 'agency expertise could be brought to bear on the …

questions presented.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212).[3]

Here, the parties do not dispute that the first step is satisfied. *See* ECF No. 14 at 10; ECF

No. 16 at 20 n.5. Indeed, "[w]ith the [Statute], as with all of the CSRA: Congress passed an

enormously complicated and subtle scheme to govern employee relations in the federal sector."

*AFGE*, 929 F.3d at 755 (quoting *AFGE v. Sec'y of the Air Force*, 716 F.3d 633, 636 (D.C. Cir.

2013)) (internal quotation marks omitted). "The scheme 'provides the exclusive procedures by

which federal employees and their bargaining representatives may assert federal labor-

management relations claims.'" *Id.* Thus, it is "fairly discernible" that Congress intended that the

statutory scheme be exclusive with respect to claims within its scope.

The parties' disagreement arises at the second step of the *Thunder Basin* analysis:

whether Plaintiff's claims are the type that Congress intended to be reviewed within the statutory

scheme. The Government essentially asks the Court to adopt the conclusions of the D.C. Circuit

in *AFGE v. Trump*, while Plaintiff contends that it will suffer irreparable harm unless it can

obtain pre-enforcement review of the Executive Orders in district court and that its broad facial

challenge to the cumulative effect of the Executive Orders is not the type of claim typically

adjudicated by the FLRA. For the following reasons, the Court concludes that Congress did not

---

[3] D.C. Circuit case law appears to weigh all three factors equally, thus differing from the Fourth Circuit and other circuits that have addressed this issue and place special emphasis on the question of meaningful review. *See Bennett*, 844 F.3d at 183 n.7. Although the Court reaches the same ultimate determination as the D.C. Circuit, it reaches that outcome by following the Fourth Circuit's approach.

intend to exclude Plaintiff's claims from the statutory review scheme, and therefore this Court lacks subject-matter jurisdiction over Plaintiff's challenge to the Executive Orders.

### A. Meaningful Review

Focusing first on meaningful review, the statutory scheme does not "foreclose all meaningful statutory review" by requiring Plaintiff to raise its claims with the FLRA in the first instance. *See Bennett*, 844 F.3d at 181. If Defendant APHIS PPQ implements the Executive Orders in a manner that Plaintiff believes violates the Statute, it may file a claim with the FLRA challenging these discrete violations. *See* 5 U.S.C. § 7105(a)(2). The FLRA may then hold hearings, take testimony and depositions, and issue subpoenas to develop a full factual record concerning the agency's actions. *Id.* §§ 7105(g)(1), (2). If necessary, it may order APHIS PPQ to cease and desist from any actions that violate the Statute and require the agency to take any other remedial actions that it considers appropriate to further the purposes of the Statute. *Id.* §§ 7105(g)(3); 7118(a)(7). If Plaintiff is dissatisfied with its result before the FLRA, it may appeal the decision to a federal circuit court, which "may make and enter a decree affirming and enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the [FLRA]." *Id.* §§ 7123(a), (c). Thus, Plaintiff is certainly able to "obtain review of and relief from the [Executive Orders] by litigating [its] claims through the statutory scheme in the context of concrete bargaining disputes." *AFGE*, 929 F.3d at 757.

Plaintiff contends that the statutory scheme does not provide meaningful review because it is not able to obtain pre-enforcement review of the Executive Orders and prevent their implementation on a nationwide scale. *See* ECF No. 16 at 28. However, parties typically cannot circumvent a comprehensive statutory scheme by bringing a pre-enforcement challenge in district court to government action that has not yet affected them, *see, e.g.*, *Shalala v. Illinois*

*Council on Long Term Care, Inc.*, 529 U.S. 1, 13–14 (2000) (requiring a broad, pre-enforcement challenge to certain Medicare-related regulations to be channeled through the administrative process after the plaintiffs had been harmed by the regulations); *Heckler v. Ringer*, 466 U.S. 602, 614 (1984) (channeling through the administrative process challenges to decisions by the Secretary of Health and Human Services not to issue Medicare reimbursements for a certain medical procedure because the challenged action was "inextricably intertwined" with claims for benefits, which generally must be raised through the statutory scheme), and the Supreme Court has made clear that judicial review need not take place pre-enforcement in order to be meaningful, *see Thunder Basin*, 510 U.S. at 212–16. Here, the Statute is exhaustive and "[i]t is the comprehensiveness of the statutory scheme involved, not the adequacy of specific remedies thereunder, that counsels judicial abstention." *Sec'y of Air Force*, 716 F.3d at 638 (internal quotation marks omitted). Thus, even if the Statute does not provide Plaintiff with a preferred or convenient remedy, Plaintiff cannot "circumvent" the Statute's comprehensive and exclusive review structure by bringing a pre-enforcement claim in district court. *See id.* at 636, 638, 639 (holding that plaintiffs could not preemptively challenge uniform regulations in district court and instead, under the Statute, were required to bring case-by-case claims to the FLRA).

Nevertheless, Plaintiff contends that pre-enforcement review of the Executive Orders in district court is the only way to avoid the irreparable harm it will suffer if it is required to channel its claims through the administrative review process. ECF No. 16 at 19–27. In support of this argument, Plaintiff cites to *Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016) and states that the Fourth Circuit has "recognized that plaintiffs are denied meaningful review when they are subject to 'some additional and irremediable harm beyond the burdens associated with the dispute resolution process.'" *See* ECF No. 16 at 20. This argument lacks merit.

11

As a preliminary matter, *Bennett's* discussion of irreparable harm is not as far-reaching as Plaintiff suggests. In *Bennett*, plaintiff sought to enjoin the Securities Exchange Commission from carrying out an allegedly unconstitutional administrative proceeding to determine whether she had violated the Securities Exchange Act (the "Exchange Act"). 844 F.3d at 177. In support of her argument that the district court had subject-matter jurisdiction over the matter, plaintiff contended that post-proceeding consideration of her constitutional challenge would be meaningless because the unconstitutional proceeding itself was the harm she sought to avoid. *Id.* at 184–85. The Fourth Circuit determined that "[t]he burden of defending oneself in an unlawful administrative proceeding, however, does not amount to irreparable injury," and that post-proceeding judicial review of any sanctions imposed by the SEC for violations of the Exchange Act was meaningfully accessible. *Id.* at 185–86 (citing *FTC v. Standard Oil Co. of Cal.*, 449 US. 232, 244 (1980) and *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010)).

In a footnote, the Fourth Circuit compared its plaintiff's case to *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) and *Mathews v. Eldridge*, 424 U.S. 319 (1976), two cases in which the Supreme Court had determined that post-proceeding judicial review was not meaningful. *See* 844 F.3d at 186 n.13. In *McNary*, the Court allowed a class of undocumented immigrants to raise a due process challenge to immigration proceedings in district court, rather than pursue eventual judicial review in a court of appeals pursuant to the statutory scheme created by the Immigration Reform and Control Act, in part because the plaintiffs could "ensure themselves review in courts of appeals only if they voluntarily surrender[ed] themselves for deportation," a price "tantamount to a complete denial of judicial review for most undocumented aliens." 498 U.S. at 496–97. In *Mathews*, the Court allowed a recipient of Social Security

disability benefits to raise a due process challenge to administrative exhaustion requirements in

district court because "his physical condition and dependency upon the disability benefits

[meant] an erroneous termination would damage him in a way not recompensable through

retroactive payments" and his constitutional challenge to the post-deprivation proceeding was

"entirely collateral" to his substantive claim of entitlement. 424 U.S. at 330, 331.

The *Bennett* court explained that *McNary* and *Mathews* were "distinguishable [from the

claim in *Bennett*] because they involved proceedings that 'posed a risk of some additional and

irremediable harm beyond the burdens associated with the dispute resolution process.'" *Bennett*,

844 F.3d at 186 n.13 (quoting *Tilton v. SEC*, 824 F.3d 276, 286 (2d Cir. 2016)) ("[T]he Supreme

Court has concluded that post-proceeding judicial review would not be meaningful because the

proceeding itself posed a risk of some additional and irremediable harm beyond the burdens

associated with the dispute resolution process."). Because the SEC proceeding in *Bennett* was

not harmful in and of itself, there was no reason to find that eventual judicial review of any

sanctions imposed by the SEC for the plaintiff's violations of the Exchange Act would be

meaningless. *See Bennett*, 844 F.3d at 184–86 & n.13.

Similarly, here, Plaintiff makes no allegation that a potential FLRA proceeding is itself

harmful. Instead, Plaintiff complains that it could potentially suffer harms, such as increased

expenses, lost bargaining opportunities, and drop in membership, as a result of the agency's

implementation of the Executive Orders before FLRA is able to make a determination that the

Executive Orders are unlawful. ECF No. 16 at 23–25. These are not harms caused by the

administrative process, and although channeling legal challenges through a statutory scheme may

come "at a price, namely, occasional individual, delay-related hardship," "paying this price may

seem justified" to avoid a patchwork system where a complex statute "may become the subject

of a legal challenge in any of several different courts." *Shalala*, 529 U.S. at 13; *see also United States v. Fausto*, 484 U.S. 439, 449 (1988) (stating that channeling claims through a statutory review scheme "enables the development, through the [administrative body], of a unitary and consistent Executive Branch position on matters involving personnel action, avoids an unnecessary layer of judicial review in lower courts, and encourages more consistent judicial decisions...." (internal punctuation omitted)).[4] Thus, the harms alleged by Plaintiff are simply not the irreparable harms that concerned the Supreme Court in *McNary* and *Mathews* or the Fourth Circuit in *Bennett*, and thus they do not, on their own, render post-proceeding judicial review of FLRA decisions meaningless.

Moreover, Plaintiff "can ultimately obtain review of and relief from the [Executive Orders] by litigating [its] claims through the statutory scheme in the context of concrete bargaining disputes" because the Statute provides it with several options for challenging the effects of the Executive Orders before the FLRA, followed by judicial review in the appropriate court of appeals. *See AFGE*, 929 F.3d at 757–58. For example, if APHIS PPQ refuses to negotiate over certain topics, such as permissive matters pursuant to the Collective Bargaining Order, whether union representatives will receive official time when they assist unions members with grievances pursuant to the Official Time Order, or the amount of time underperforming employees will have to demonstrate improved performance pursuant to the Removal Order, Plaintiff may assert an unfair labor practice claim or a negotiability claim, *see* 5 U.S.C. §§ 7105(a)(2)(E), (G), at which point the FLRA can determine whether the agency violated the

---

[4] Plaintiff contends that it is review by the FLRA that will lead to an impermissible "patchwork of differing litigation results." ECF No. 16 at 16. This argument belies the Supreme Court precedent cited by the Court and seems illogical, given that Plaintiff's preferred system would likely lead to different conclusions by different district courts on the lawfulness of the Executive Orders, rather than a single decision by the FLRA (and then by a court of appeals) as is required by the statutory scheme.

Statute, *see AFGE*, 929 F.3d at 757 (citing FLRA decisions). If an employee is improperly terminated, the FLRA can "requir[e] reinstatement of [the] employee with backpay." 5 U.S.C. § 7118(a)(7)(C). If, as a result of provisions in the Official Time Order governing use of government property, the FLRA finds that Plaintiff was unlawfully required to divert dues money to pay for resources formerly provided by the government, the FLRA can order reimbursement. *See FDIC v. Fed. Labor Relations Auth.*, 977 F.2d 1493, 1497–98 (D.C. Cir. 1992). If APHIS PPQ limits collective bargaining to four to six months pursuant to the Collective Bargaining Order, and Plaintiff believes this amounts to bad faith bargaining, it can raise an unfair labor practice claim with the FLRA and the FLRA could order the agency to continue or reopen collective bargaining in a manner consistent with its instructions. *See* 5 U.S.C. § 7116(a)(5). And even where the Statute does not provide for a specific remedy, FLRA may fashion any remedy that "it considers appropriate to carry out the policies of" the Statute. *See id.* § 7105(g)(3).[5]

Still, Plaintiff contends that the FLRA cannot award the exact relief it seeks here— categorical invalidation of the Executive Orders. *See* ECF No. 16 at 22, 27 (citing *NTEU*, 60 F.L.R.A. 782, 783 (2005); *AFGE, Local 4052*, 56 F.L.R.A. 414, 416–17 (2000); and *Fort Braff Ass'n of Educators, NEA*, 31 F.L.R.A. 70, 71 (1988)). As an initial matter, "[e]ven plaintiffs with 'nationwide' or 'systemwide' challenges may not 'circumvent' the scheme established by the Statute." *AFGE*, 929 F.3d at 756–57 (citing *Sec'y of Air Force*, 716 F.3d at 639). Moreover, the FLRA need only enjoin unlawful action by Defendant APHIS PPQ in order to remedy any harms

---

[5] In its response, Plaintiff contends that the Executive Orders will cause it to lose bargaining opportunities and membership and that there is no administrative or judicial remedy to cure those harms. These harms, however, are speculative, and it is not clear that they will materialize before the administrative process has run its course. Thus, the prospect of these harms is not sufficient to render the Statute's review scheme meaningless. *Cf. Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002) (stating that the irreparable harm component of a preliminary injunction analysis "must be neither remote nor speculative, but actual and imminent" (internal quotation marks omitted)).

to Plaintiff in particular, which it can certainly do. *See* 5 U.S.C. §§ 7118(a)(7)(A), (B). And, even

if the FLRA cannot invalidate the Executive Orders, a federal court of appeals could do so on

appeal. *See AFGE*, 929 F.3d at 758–59; *see also Shalala*, 529 U.S. at 23 ("[A] court reviewing

an agency determination under § 405(g) [of the Medicare Act] has adequate authority to resolve

any statutory or constitutional contention that the agency does not, or cannot, decide."). Thus,

"[a]lthough [Plaintiff] [is] not able to pursue [its] preferred systemwide challenge through the

scheme, [it] can ultimately obtain review of and relief from the executive orders by litigating [its]

claims in the context of concrete bargaining disputes. Such review … qualifies as meaningful."

*See AFGE*, 929 F.3d at 760.

### B. Wholly Collateral

Plaintiff's claims are also not "wholly collateral" to the statutory scheme. *See AFGE*, 929

F.3d at 759 (stating that "[t]his consideration is 'related' to whether 'meaningful judicial review'

is available…" (quoting *Jarkesy v. SEC*, 803 F.3d 9, 22 (D.C. Cir. 2015))). "[T]he reference

point for determining whether a claim is 'wholly collateral' is not free from ambiguity." *Bennett*,

844 F.3d at 186. "On the one hand, the Supreme Court has compared the merits of a

constitutional claim to the substance of the charges at issue." *Id.* (citing *Eldridge*, 424 U.S. at 33)

(internal quotation marks omitted). "On the other hand, the Court has considered whether a claim

is 'wholly collateral to [the] statute's review provisions'" and whether the challengers seek to

obtain the same relief they could seek in an agency proceeding. *See id.* (quoting *Elgin*, 567 U.S.

at 15). Ultimately, where a challenge is "of the type that [is] 'regularly adjudicated' through the

statutory scheme and the statutory scheme empower[s] the agency and reviewing appellate court

to provide the relief sought by the plaintiffs," the claim is not "wholly collateral" to the statutory

scheme. *AFGE*, 929 F.3d at 760 (quoting *Elgin*, 567 U.S. at 22).

16

Here, Plaintiff's claim is clearly "of the type that is regularly adjudicated through the [Statute]'s scheme: disputes over whether the Statute has been violated." *See id.* And, as the Court has already explained, Plaintiff "ask[s] [this Court] for the same relief that [it] could ultimately obtain through the statutory scheme, namely rulings on whether the [Executive Orders] are lawful and directives prohibiting [Defendant APHIS PPQ] from following the [Executive Orders] during bargaining disputes." *See id.*

Even so, Plaintiff contends that its claims "do[] not fall within the heartland of issues adjudicated by the FLRA" because it seeks to bring a facial challenge to the cumulative unlawful effect of the Executive Orders, rather than a challenge to discrete agency action. ECF No. 16 at 29. Although Plaintiff frames the Complaint as a broad facial challenge to the Executive Orders, however, the dispute giving rising to this action is that Defendant APHIS PPQ will implement the Executive Orders, and therefore allegedly violate the Statute, during future collective bargaining negotiations with Plaintiff. Thus, "[t]he practical objective of [Plaintiff's] complaint" is to ensure that APHIS PPQ approaches negotiations in a manner consistent with the Statute and does not take discrete actions that, according to Plaintiff, violate the Statute. *See Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996). Plaintiff cannot circumvent the Statute's review provisions simply because it is able to frame its challenge as a broad facial challenge. *See id.* at 523, 525.

The Fourth Circuit's decision in *Virginia v. United States*, 74 F.3d 517 (4th Cir. 1996) and the Supreme Court's decision in *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) reinforce this conclusion. In *Virginia*, the state, anticipating that it would eventually incur sanctions from the Environmental Protection Agency ("EPA") under the Clean Air Act ("CAA"), brought a constitutional challenge to certain CAA provisions in district court. 74 F.3d at 519–21. The

Fourth Circuit, however, held that the district court lacked subject-matter jurisdiction over the claim because "although [the state's complaint] s[ought] a ruling that certain parts of the CAA [were] unconstitutional, the practical objective of the complaint [was] to nullify final actions of EPA" and "§ 307(b)(1) [of the CAA] channels review of final EPA action exclusively to the court of appeals, regardless of how the grounds for review are framed." *Id.* at 523.

Similarly, in *Elgin*, plaintiffs challenged the termination of their federal employment for failing to register for the Selective Service in violation of the Military Selective Service Act by raising a facial equal protection challenge to the Act in district court. 567 U.S. at 6–7. The Supreme Court held, however, that the facial claim was a "vehicle by which [plaintiffs] [sought]" to challenge the agency's employment termination criteria, which was "precisely the type of" action "regularly adjudicated" by the relevant administrative body. *Id.* at 22. Thus, the plaintiffs were required to pursue their challenge through the statutory review scheme. *See id.* at 21–22.

Here, even though Plaintiff seeks to bring a facial challenge to the cumulative effect of the Executive Orders, the "practical objective of the complaint" is to "nullify" provisions of the Executive Orders during the collective bargaining period between APHIS PPQ and Plaintiff and to avoid negotiability or unfair labor practice issues that Plaintiff contends would violate the Statute. See *Virginia*, 74 F.3d at 523. Thus, the facial challenge is simply a "vehicle by which [it] seek[s]" to challenge Defendant APHIS PPQ's implementation of the Executive Orders as contrary to the Statute, which is "precisely the type of" claim "regularly adjudicated" by the FLRA. *See Elgin*, 567 U.S. at 22.[6] Thus, these claims would not be wholly collateral to the

---

[6] Plaintiff encourages the Court to rely on *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849 (D.C. Cir. 2002), where the D.C. Circuit determined that the plaintiffs' challenge to the Department of Labor's Black Lung Benefits Act ("BLBA") regulations as impermissibly retroactive did not need to be appealed to a circuit court, but could instead be reviewed in the district court. The D.C. Circuit reasoned that the BLBA appeared to only direct review of *adjudications* to the circuit courts, leaving regulations to be reviewed by district courts under the APA. 292 F.3d at 856. The D.C. Circuit also explained that to determine whether the regulations were impermissibly retroactive, it was "necessary to analyze carefully all of the regulations together as well as the entire rulemaking process, which

Statute and so, as was required for the state in *Virginia* and the terminated employees in *Elgin*, Plaintiff must proceed through the Statute's designated review process and raise its claims with the FLRA in the context of discrete bargaining disputes.

### C. Agency Expertise

Finally, the FLRA's expertise could certainly be "brought to bear" on the questions presented in this case, and Plaintiff does not appear to contend that it could not.[7] As the Court has discussed, Plaintiff essentially alleges that the agency will violate the Statute by implementing the Executive Orders, and FLRA's expertise is clearly relevant to whether this is the case. Because "[t]he FLRA has primary responsibility for administering and interpreting the Statute" and it serves the "special function of applying the general provisions of the Statute to the complexities of federal labor relations," the matters in the Complaint "lie at the core of the FLRA's 'specialized expertise in the field of federal labor relations.'" *See AFGE*, 929 F.3d at 760 (citing 5 U.S.C. § 7105(a); *AFGE Council of Locals No. 214 v. FLRA*, 798 F.2d 1525, 1528 (D.C. Cir. 1986); *Nat'l Fed'n of Fed. Emps. Local 1309 v. Dep't of Interior*, 526 U.S. 86, 99 (1999)). Thus, because the FLRA's "expertise can otherwise be 'brought to bear'" on Plaintiff's claims, there is "no reason to conclude that Congress intended to exempt such claims from exclusive review before the" FLRA. *See Elgin*, 567 U.S. at 23.

---

would not be feasible in individual adjudications dealing with particular regulatory provisions." *Id.* at 858. The Court does not find *Nat'l Mining* to be persuasive because it deals with a different statutory scheme and a different type of claim. Here, as the Court has already explained, Plaintiff's claims are aimed at stopping Defendant APHIS PPQ from taking discrete actions that allegedly violate the Statute, and as the D.C. Circuit (the same court that handled *Nat'l Mining*) itself determined in *AFGE v. Trump*, these sorts of claims can certainly be made in front of the FLRA, followed by judicial review in the appropriate court of appeals. *See AFGE*, 929 F.3d at 757.

[7] In fact, Plaintiff's response focuses entirely on the "meaningful review," and to a lesser extent the "wholly collateral," factors of the *Thunder Basin* test.

This Court therefore joins the D.C. Circuit and the Western District of New York in finding that it lacks subject-matter jurisdiction over Plaintiff's claims. Accordingly, the Complaint must be dismissed.[8]

## IV.    CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss for Lack of Subject-Matter Jurisdiction is granted. A separate Order shall issue.

Date: <u>May     21, 2020</u>                                              /s/_____
                                                                            GEORGE J. HAZEL
                                                                            United States District Judge

---

[8] Also pending before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 12, and the Government's Motion for Extension of Time to Respond to Motion for Summary Judgment and Motion to Stay Summary Judgment Briefing Schedule, ECF No. 15. Because the Court has determined it lacks subject-matter jurisdiction over this case, both motions are denied as moot.